

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 10, 1961

Hon. Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-1052

Re: Whether the Transwestern Pipeline Company may
file a franchise tax return as a public utility
before commencing business as such, or should
they be liable for franchise tax as an "ordi-
nary corporation" and kindred questions.

Dear Mr. Calvert:

You have requested the opinion of this department con-
cerning the franchise tax liability of Transwestern Pipeline
Company under Article 12.01, Title 122A, Revised Civil Statutes
of Texas, based upon the following factual situation.

Transwestern Pipeline Company, a Delaware corporation,
obtained a certificate of authority from the Secretary of State
on October 29, 1957, to do business in Texas for the following
purposes:

"(a)  To buy, sell, transport, store and furnish
gas for light, heat, power and other purposes; to buy,
exchange, lay down, construct, contract for, lease,
and in any and all other ways acquire, take, hold and
own pipelines, tubes, tanks, storage facilities, com-
pressor stations, pump stations, connections, fixtures
and such telegraph and telephone lines, machinery,
apparatus, devices and arrangements as may be useful
or necessary to operate such pipes and pipelines be-
tween different points, and to improve, maintain and
operate the same, and to sell, mortgage, lease or
otherwise encumber or dispose of the same;

"(b)  To mine for, produce, buy, acquire, use,
sell and distribute natural gas for light, heat, power
and other purposes, and also to produce, acquire, use,
sell and distribute the by-products and residual prod-
ucts therefrom, and to construct or in any manner ac-
quire, maintain, operate, encumber, sell or in any
manner dispose of works therefor, and any and all

necessary equipment and appurtenances necessary or
incident to such operations and business;

"(c)  To establish and maintain an oil busi-
ness with authority to contract for the lease and
purchase of the right to prospect for, develop and
use coal and other minerals, petroleum and gas;
also the right to erect, build and own all necessary
oil tanks, cars and pipes necessary for the operation
of the business of the same; provided, however, that
nothing hereinabove contained shall authorize the
Company to engage directly in the oil pipe line busi-
ness in the State of Texas."

It began transporting gas through its pipelines in the
State of Texas on July 1, 1960.  Transwestern Pipeline Company
rendered its return on October 29, 1958, in which it paid the
minimum tax, no business of any nature having been transacted
by the company under any of its purpose clauses during the taxa-
ble period.

However, the company's return filed for the year 1960
reveals that the company received the sum of $3,750.00 from gross
receipts from its entire business, inclusive of the $3,750.00,
including interest on obligations of the United States, in the
amount of $14,453.00, and proceeds from the sale of pipe (Illi-
nois), in the sum of $288,305.00, or a total of gross receipts
from all business done, in the sum of $306,518.00.  Calculating
its return on 1.22%, which is the percentage relationship which
the gross receipts from its business done in Texas bears to the
total gross receipts of the corporation from its entire business,
the corporation paid a basic franchise tax in the sum of $1,104.75
as a public utility corporation in accordance with the provisions
of Article 12.01(3), which is in part as follows:

"(3)  Except as provided in preceding subsec-
tion (2), all public utility corporations, which
shall include any such corporation engaged solely
in the business of a public utility as defined by
the laws of Texas whose rates or services are regu-
lated, or subject to a regulation in whole or in
part, by law, shall pay a franchise tax as provided
in this Article which shall be based on whichever of
the following shall yield the greatest tax:

(a)  Two Dollars and Twenty-five Cents ($2.25)
per One Thousand Dollars ($1,000) or fractional part
thereof applied to that portion of the stated capi-
tal, surplus and undivided profits, allocable to
Texas in accordance with Article 12.02 of this Chap-
ter.

      (b) Two Dollars and Twenty-five Cents ($2.25) per One Thousand Dollars ($1,000) or fractional part thereof applied to the assessed value for County ad valorem tax purposes of the property owned by the corporation in this State.

      (c) Twenty-five Dollars ($25.00)."

Your first question is as follows:

"May the Transwestern Pipeline Company file a franchise tax return as a 'public utility' before they actually commence business as a public utility, or should they be liable for franchise tax as an 'ordinary corporation?'"

There is no question that Transwestern Pipeline Company is a public utility corporation as defined by Article 6053, Revised Civil Statutes, although it is not a corporation authorized to engage solely in the business of a public utility since, under the third purpose clause contained in its certificate of authority, supra, it may establish and maintain an oil business which is not the business of a public utility corporation as defined by the laws of Texas.

The franchise tax levied under Chapter 12, Title 122A, R.C.S., is a charge made by the State of Texas for the privilege granted it of doing business in Texas. Houston Oil Co. of Texas v. Lawson, 175 S.W.2d 716 (Civ.App. 1943, error ref.). If the company does no business it would pay the franchise tax as provided by Article 12.01(3)(c), or as provided by Article 12.01(3) (b) if it yields a greater tax, which was done by the corporation in its returns for 1958 and 1959.

Since its return for 1960 shows receipts from business done in Texas, which were not received from business done under the third purpose clause above referred to, but from capital investments incident to its public utility business, such receipts are allocable to the company's business done as a public utility corporation, even though it did not actually begin transporting gas through its pipelines as a public utility corporation in the State of Texas until July 1, 1960. Therefore, Transwestern Pipeline Company had the right to file its franchise tax return as a public utility before it began transporting gas through its pipe lines in the State of Texas on July 1, 1960.

Your second question is as follows:

"What is the determining factor that classifies a corporation as being engaged 'partly in the business

of a public utility as defined in Subsection (3)
of this Article and partly in business embraced
in Subsection (1) of the Article' for franchise
tax purposes?"

The company's records do not show that it has been en-
gaged at any time in the oil business as provided in the third
purpose clause above referred to, but if and when it engages in
such business, then its receipts therefrom should be allocated
as provided by Article 12.01(4), Title 122A, since it will then
be engaged partly in the business of a public utility as defined
in subsection (3), and partly in business embraced in subsection
(1) of Article 12.01.

Your third question, being based upon a hypothetical
situation which is not applicable to the subject corporation, no
answer thereto is deemed necessary in view of the long established
custom of this office not to give opinions in answer to hypotheti-
cal questions.

## SUMMARY

Transwestern Pipeline Company, being a public
utility corporation as defined by Article 6053,
R.C.S., has the right to file its franchise tax
return as a public utility corporation under the
provisions of Article 12.01(3), Title 122A, R.C.S.
The factor which classifies a corporation as be-
ing partly in the business of a public utility as
defined in Article 12.01(3), and partly in business
embraced in Article 12.01(1), under the provisions
of Article 12.01(4), is determined by the actual
receipts from its business done under Article 12.01(1),
Title 122A.

Very truly yours,

WILL WILSON
Attorney General of Texas

By   C. K. Richards

C. K. Richards
Assistant

CKR:wb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Virgil Pulliam
L. P. Lollar
Maston Courtney
Dudley McCalla

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Morgan Nesbitt